UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL A. MANNINO                              CIVIL ACTION

VERSUS                                          NUMBER: 09-660-BAJ-SCR

SID J. GAUTREAUX, ET AL

# MANNINO'S OPPOSITION TO
# MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

**I.      PROCEDURAL AND FACTUAL HISTORY**

**A.      PROCEDURAL HISTORY**

The procedural history as outlined by the defendants is accurate.  The plaintiff concedes that

there is no genuine issue of material facts as to the following claims:  (1)  Plaintiff's 42 USC § 1983

claim against Sid J. Gautreaux, in his official capacity.  (2) Plaintiff's state law negligence claims

against Sid J. Gautreaux. (3) All of plaintiff's claims against the defendant, Nelson; and (4)

Plaintiff's state law claim of Intentional Infliction of Emotional Distress.

**B.      PLAINTIFF'S STATEMENT OF FACTS**

The plaintiff, Michael A. Mannino, Sr., disagrees with many of the facts contained in the

**-1-**

defendants' factual background. There are a number of statements in it that are disputed and require the following clarifications.

On August 23, 2008 Mannino, 75 years old, received a call from some of his tenants. They advised him that there were unknown people walking around at his rental property. He and several family members proceeded to the property. Upon his arrival at his rental property he was approached by the unknown individuals, specifically, the defendants, Lochridge and Major, who refused to identify themselves. They were wearing plain clothes and had no badges. Mannino did not know who they were. (Defense Exh. G - Mannino Depo. pp 10-14).

The first thing the defendants, Lochridge and Major, told the plaintiff after he arrived was: "Get in your truck and get the hell out of here!". Mannino responded by advising the defendants that they were on his property. He asked them who they were. (Defense Exh. G - Mannino Depo. p.14, lines 4, 6-8). The defendants, Lochridge and Major, then advised the plaintiff to get in his truck or he would be handcuffed. He asked them why. They told him that it was an investigation. (Defense Exh. G - Mannino Depo. p.16, lines 12-24). Mannino was told two or three times that if he didn't leave he could be arrested. (Defense Exh. G - Mannino Depo. p.19, lines 17-25; p.18, lines 18-25; p.19, lines 1-11; p.20, lines 5-6; p. 23, lines 21-25; pp. 24-27).

Because the defendants would not identify themselves or the nature of their investigation, he did not immediately leave. (Defense Exh. G - Mannino Depo. p.17, lines 3-7; p.38, lines 18-25; p.39, lines 13-23; p.56, line 1).

After multiple requests for information with no response, the plaintiff, Mannino, turned to walk away. At that point he was unexpectedly grabbed from behind by the defendant, Major. The

-2-

defendants, Lochridge and Jones, also grabbed the plaintiff. His arm was jerked backwards behind him and pulled out of the socket while one arm was cuffed. He was then slammed up against a vehicle by Major and then onto the ground by the defendants, Major, Lochridge and Jones. (Defense Exh. G - Mannino Depo. p.18, lines 18-25; p.19, lines 1-11; p.20, lines 5-6; p.23, lines 21-25; pp. 24-27). Mannino never resisted or battered any of the defendants during this arrest. Mannino never touched any of the defendants prior to being assaulted and battered. (Defense Exh. G - Mannino Depo. pp.18-19; 23-24; 53-54; 59-60). Prior to grabbing Mannino, the defendant, Major, never advised Mannino that he was being arrested. (Defense Exh. G - Mannino Depo. p.77, lines 14-25; p.78, lines 1-6).

The plaintiff didn't learn that the defendants, Lochridge, Jones and Major, were deputies until after he was assaulted, battered and arrested. (Defense Exh. G - Mannino Depo. p.13, lines 8-16).

After the plaintiff was thrown to the ground he lost consciousness for 3 to 4 minutes. (Defense Exh. G - Mannino Depo. p. 26, lines 4-10). As a result of the incident Mannino, while in custody, was taken to Earl K. Long ER where he complained that he had been beaten by the defendants. He had significant injuries to his neck, face and arms and complained of a dislocated shoulder. (Defense Exh. G - Mannino Depo. pp. 34-36; 40-60). (Plaintiff's Exh. A - Earl K. Long ER Record, 2 pages). Facial photographs reveal the severity of his injuries. (Plaintiff's Exh. B - Photographs, 3 pages).

This incident was the first time the plaintiff had ever been arrested. He has been married for over 55 years. He has four children. He owns his own construction company. (Defense Exh. G -

-3-

Mannino Depo. pp. 7-10 and p. 50, line 17).

The plaintiff's son, Mike Mannino, Jr., was a witness to the event. He has been a supervisor at Exxon for over 31 years. (Plaintiff's Exh. C - Mike Mannino, Jr. Depo. p.4, lines 23-25; p.5, lines 1-3).

Mike Mannino, Jr. confirmed that upon arrival to investigate at the property he and his father were approached by the defendants who behaved arrogantly. When they questioned the defendants as to what they were doing on the property they were ordered to leave. When he and his father, the plaintiff, asked the defendants to identify themselves they refused to do so. His father told the defendants that it was his property. The defendants advised Mike Mannino, Jr. and his father that unless they left they would be arrested. (Plaintiff's Exh. C - Mike Mannino, Jr. Depo. p. 10, lines 2-25; p.14, lines15-21).

Mike Mannino, Jr. suspected that the defendants might have been with the INS but he had no clue who they really were or what they were doing there. He described all the defendants as being dressed in plain clothes and driving unmarked vehicles. (Plaintiff's Exh. C - Mike Mannino, Jr. Depo. p.16, lines 2-12).

Mike Mannino, Jr. specifically recalls not seeing any badges. He remembers asking the defendant, Lochridge, "Who are you and what are you doing here?" Lochridge responded, "It is none of your business. We have an investigation going on. You need to leave". (Plaintiff's Exh. C - Mike Mannino, Jr. Depo. p.16, lines 13-25; p. 22, lines 18-25; p. 23, lines 1-8).

Mike Mannino Jr. denies that his father poked any of the deputies in the chest, resisted arrest or pushed the defendant, Major. He observed the three defendants, Major, Jones and Lochridge,

**-4-**

take his father to the ground. (Plaintiff's Exh. C - Mike Mannino, Jr. Depo. p. 25, lines 12-27; p. 28, lines 12-20).

It wasn't until his father was being treated by EMS at the scene that the defendant officers calmed down, identified themselves and explained to them what they were doing on the property. (Plaintiff's Exh. C - Mike Mannino, Jr. Depo. p. 22, lines 15-20; p. 26, lines 1-18; p. 35, lines 16-25).

Lochridge told Mike Mannino, Jr. that he received information in early August from an informant that there were Hispanic males living in the house bringing in large quantities of marijuana from Texas. That information included the name of an individual that hadn't worked for Mannino in two years.[1] The information relied upon by the defendants to do the "knock and talk" was stale. The defendant, Jones, admitted that they had no probable cause to search the house. (Plaintiff's Exh. C - Mike Mannino, Jr. Depo. pp. 35-36; Defense Exh.E- Jones Depo. p. 9-14).

Another witness to the incident was Brad Mannino, the grandson of the plaintiff. He rode with his grandfather to the scene of the incident. After he and his grandfather pulled into the property and exited their vehicle they were approached by Major. They asked the defendant, Major, who he was. Major asked them the same question. The defendant, Major, refused to identify himself. At that point he didn't even indicate he was involved in an investigation at that location. (Plaintiff's Exh. D - Brad Mannino Depo. p. 8, lines 11-12).

His grandfather, Mike Mannino, Sr., advised the defendant, Major, that they were on his

---

[1] The Hispanics living at the rental property were employees of the plaintiff. (Plaintiff's Exh. E - Dennis Mannino Depo. p.7, lines 21-25; p. 8).

**-5-**

property. Major was asked multiple times who he was yet Major refused to respond or identify himself. (Plaintiff's Exh. D - Brad Mannino Depo. p. 13, lines 12-21). None of the defendants wore badges. Mike Mannino, Jr., also continued to ask the defendants who they were. They refused to identify themselves. (Plaintiff's Exh. D - Brad Mannino Depo. pp.13-14; p.15, lines 1-6).

Brad Mannino was standing close to his grandfather when the defendants attacked his grandfather. The plaintiff never yelled at or touched any of the defendants. Immediately before the assault his grandfather and the defendant, Major, were talking back and forth. As his grandfather turned to walk away from Major, the defendant, Major, grabbed the plaintiff by the arm. They both fell onto a vehicle. (Plaintiff's Exh. D - Brad Mannino Depo. p. 17 ; p.18, lines 1-9 and 21-25; p.19, lines 1-25; p. 21, lines 1-4). After his grandfather was taken to the ground the other two defendants came over, got on top of the plaintiff and put their knees in his back. His grandfather never resisted at any point in time. (Plaintiff's Exh. D - Brad Mannino Depo. pp. 19-20).

The defendants claim in their Factual Background that the plaintiff was arrested because he refused to leave his property when ordered to do so. They state that this is resisting arrest under La.R.S. 14:108. They also claim that during the arrest Mannino pushed the defendant, Major, and in so doing committed a battery in violation of La.R.S. 14:34.2. As a result of these actions the plaintiff was arrested for Resisting an Officer and Battery of a Police Officer.[2] Although he was initially arrested, after being taken to the hospital, he was released from custody and issued

---

[2] In their Opposition, the defendants also argue that the plaintiff poked the defendant, Major, several times in the chest prior to being arrested and that this was Battery on an Officer in violation of La.R.S. 14:34.2. Mannino, the plaintiff, denies this. (Defense Exh. G - Mannino Depo. p. 19, lines 9-13; p. 57, line 25; p. 58, lines 1-2; p. 59, lines 9-13). So does Mike Mannino, Jr. (Plaintiff's Exh. C - Mike Mannino, Jr. Depo. p.25, lines 12-17) and Brad Mannino (Plaintiff's Exh. D - Brad Mannino Depo. p.17, lines 16-22).

summonses for these alleged offenses.

Contrary to the defendants' facts the defendant, Major, did not advise the plaintiff that he was under arrest before he physically assaulted and battered the plaintiff. Likewise the plaintiff did not poke, resist, pull away or push the defendant, Major. The take down performed by Major occurred as the plaintiff turned to walk away.

The plaintiff has stated and established with deposition testimony and documents clear and convincing evidence of civil rights violations, specifically violations of his First, Fourth and Fourteenth Amendment rights including conspiracy and state law claims of assault, battery, false imprisonment and false arrest. The defendants' suggestion that there does not exist a genuine issue of material facts as to these claims is unsupported by the deposition testimony.

## II. LAW AND ARGUMENT

### A. CIVIL RIGHTS CLAIMS (§ 1983)

#### 1. OFFICERS' LIABILITY IN INDIVIDUAL CAPACITY

##### a. False Arrest Claim (Fourth and Fourteenth Amendment)

In the Factual Background, the defendants state that they had the right to arrest the plaintiff because they identified themselves as sheriff's deputies, asked him to leave and he refused. This, they believe, is resisting arrest. Defendant, Major, then claims he told the plaintiff he was under arrest and grabbed his right arm. He then alleges that the plaintiff pushed him, and in so doing committing a battery.

Alternatively, in Subsection II, E, 2 of their Memorandum, the defendants claim that

**-7-**

Mannino battered the defendants, Major and Lochridge, prior to being placed under arrest, when he poked the defendants.

The plaintiff and his two witnesses unequivocally state that the defendants refused to identify themselves even after being advised by the plaintiff that they were on his property. Mannino and his witnesses also deny that Mannino ever touched any of the defendants or was ever told he was under arrest prior to being physically assaulted and battered by three defendants, Major, Lochridge and Jones.

There exists a material dispute between the parties as to what occurred prior to the plaintiff being arrested. If you believe the plaintiff and his witnesses, he arrived at his property and asked the defendants who they were. The defendants would not tell him who they were. He told the defendants they were on his property. The defendants told him to leave. He wouldn't leave. The defendants threatened to arrest him. He asked them why. They told him it was an investigation. He asked them to explain. They threatened to cuff him. He asked them why. They would not tell him. The defendants had no badges. They were in plain clothes and in unmarked vehicles.

When the plaintiff turned his back on the defendant, Major; Major suddenly and unexpectedly grabbed him by his arm. Mannino was then thrown against a car by Major. His shoulder was dislocated. He was then thrown to the ground by Major, Lochridge and Jones where he sustained additional injuries.

Assuming these facts are true, the defendants had no right to arrest the plaintiff who violated no laws prior to being assaulted and battered by the defendant, Major. Since the plaintiff denies poking Major, Major had no right to arrest him for battery. The only issue left therefore is whether

**-8-**

Major had a right to arrest him for Resisting Arrest under La.R.S. 14:108 for his refusal to leave.

Under Louisiana Law, **Resisting an Officer, La.R.S. 14:108** is defined in pertinent part as follows:

> A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.
>
> B. (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
>
> > (a)   Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
> >
> > (b)   Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.
> >
> > (c)   Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.
> >
> > (d)   Congregation with others on a public street and refusal to move on when ordered by the officer.
> > ...

In addition, **Louisiana Code of Criminal Procedure, Article 218** entitled "**Method of Arrest Without Warrant**" requires the following steps be followed by a peace officer when making

**-9-**

an arrest.

> A peace officer, when making an arrest without a warrant, shall inform the person to be arrested of his intention to arrest him, of his authority, and of the cause of the arrest. A private person, when making an arrest, shall inform the person to be arrested of his intention to arrest him and of the cause of the arrest.

> The officer or private person making the arrest need not so inform the person to be arrested if the person is then engaged in the commission of an offense, or is pursued immediately after its commission or after an escape, or flees or forcibly resists before the officer or person making the arrest has an opportunity to so inform him, or when the giving of the information would imperil the arrest.

If Mannino's arrest occurred because he refused to leave his property then the arrest of Mannino was unlawful for at least two reasons.

First, there was no probable cause to arrest Mannino. He was legally on his property. The defendants on the other hand had no right to be on the property. They were not there to "make a lawful arrest, lawful detention or seize property, or to serve any lawful process or court order" and therefore there was no probable cause to arrest or seize the plaintiff for Resisting an Officer in violation of La.R.S. 14:108.

In *State v. Lindsay*, 388 So.2d 781 (La. 1980), the defendant was convicted in state district court for Resisting Arrest in violation of La.R.S. 14:108. In that case the defendant approached deputies who were on his property investigating a domestic disturbance. He demanded to know why they were there. According to the deputies the defendant appeared intoxicated and used obscenities. The officers arrested the defendant who resisted the arrest by seizing a mirror on a truck with his hands. Although the defendant was charged with both Resisting Arrest and Disturbing the Peace

-10-

by Intoxication he was found not guilty of the public intoxication because it was not in public.

On appeal the Louisiana Supreme Court concluded that there never was probable cause to arrest the defendant for public drunkenness. If there was no probable cause to arrest him for public drunkenness, then he could not be charged with resisting his own arrest for public drunkenness. The Supreme Court then also concluded that the defendant's arrest for resisting arrest was unlawful because it was not unlawful for him to interfere with the officers' investigation since the officers "were not acting in their official capacity while attempting to seize property, serve process or arrest..." "If the officer is not engaged in attempting one of those three things, then a defendant who opposes him cannot be considered guilty of resisting an officer". *Lindsay* at 783.

The court further held in *Lindsay* that even if the defendant's behavior (movements) interfered with the officers investigation, it did not provide grounds for his arrest pursuant to R.S. 14:108.

In *State v. Huquet*, 369 So.2d 1331 (La. 1979), the Louisiana Supreme Court rejected the contention that interference with an officer's investigation is a violation of La.R.S. 14:108, Resisting an Officer. That court held that unless an officer is engaged in attempting to arrest someone, seize property, or serve process, an arrest for violation of La.R.S. 14:108 is unlawful.

This conclusion was also reached in *State v. Green*, 706 So.2d 536, 97-702 (La.App. 5 Cir. 12/30/97). In *Green* the defendant was a guest passenger in a car. After the driver of the car fled following a traffic stop, *Green*, a guest passenger, was ordered out of the car by the police. He refused to comply. Subsequently he was pulled out of the car and placed under arrest for resisting arrest in violation of La. R.S. 14:108. Ultimately the appellate court reversed defendant's conviction

**-11-**

because his arrest was deemed unlawful even though his actions interfered with the arresting officers investigation.

Second, La.C.Cr.P. Art. 218 entitled "Method of Arrest Without Warrant" requires a peace officer to inform the person being arrested without a warrant of his intention to arrest him and of his authority. None of the defendants identified themselves as lawful officers according to the plaintiff and his two witnesses. Finally, it wasn't until the plaintiff turned his back to the defendant, Major, that Major and the defendants, Lochridge and Jones, grabbed the plaintiff and placed him under arrest. The defendants had time to advise the plaintiff he was under arrest but failed to do so. This notice requirement is driven home by subsection (b) of the OFFICIAL REVISION COMMENT to Article 218 which in pertinent part states:

> (b)  Arts. 217 and 218 require the officer to inform the person arrested of his authority and purpose "when making" the arrest, whish is the language of the A.L.I. Code. The Louisiana source provision used "when arresting". Cases cited in the A.L.I. Commentary to the source provision indicate that the notice must be given before or simultaneously with the arrest.
> ...

Although Mannino denies he resisted arrest, it is a long established principle under Louisiana law that a citizen has the right to resist and unlawful arrest. *White v. Morris*, 345 So.2d 461 (La. 1977); *City of New Orleans v. Lyons*, 342 So.2d 196 (La. 1977); *State v. Lopez*, 235 So.2d 394 (La. 1970); *City of Monroe v. Ducas*, 203  La. 974, 14 So.2d 781 (1943); La.R.S. 14:108; C.Cr.P. Art. 220.

The defendants, Major, Lochridge and Jones, participated in the arrest of Mannino according to Mannino and his two witnesses. They have all been accused of violating Mannino's Fourth

-12-

Amendment Right to be free from unreasonable search and seizure, ie. arrest without probable cause. Analyzing Mannino's description of what occurred with the law on Resisting Arrest, it is clear, based upon Mannino's deposition evidence, that he describes an illegal arrest under U.S.C. 42§1983. If you take Mannino and his witnesses at their word, the defendants' arrest of Mannino was unlawful.

### b. Excessive Force Claim (Fourth and Fourteenth Amendment)

The Fourth Amendment protects citizens against the use of excessive force. It is primarily directed at the initial act of restraining an individual's liberty, such as an investigatory stop or arrest. *Valencia v. Wiggins*, 981F2d 1440, 1444 (5th Cir.1993); see also *Brothers v. Klevenhagen*, 28 F.3d 452, 455-56- (5th Cir.1994). For plaintiff to succeed on an excessive force claim under section 1983 he must prove (1) an injury (2) which resulted directly and only from use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable. *Collier v. Montgomery*, 569 F.3d 214, 218-219 (5th Cir. 2009). *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir.) (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1991)). "The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Williams*, 180 F.3d at 703). The amount of injury necessary to satisfy the "de minimis" requirement is directly related to the amount of force that is constitutionally permissible under the circumstances. *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996).

The Supreme Court has provided the following guidance in measuring the reasonableness of an officer's conduct:

-13-

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments - - in circumstances that are tense, uncertain, and rapidly evolving - - about the amount of force that is necessary in a particular situation. *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 1872 (1989).

In gauging the objective reasonableness of the force used by a law enforcement officer, a court must balance the amount of force used against the need for that force. *Ikerd*, supra (citing *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993)).

Mannino has introduced evidence of more than de minimus injury to his shoulder and face as a result of this incident. He was treated at the ER for his injury which included a dislocated shoulder and facial lacerations. (Plaintiff's Exh. A - Earl K. Long ER record, 2 pages). (Plaintiff's Exh. B - Photographs, 3 pages).

The Supreme Court recognized that in the Fourth Amendment context, a certain amount of force is reasonable when a police officer arrests a dangerous, fleeing suspect. *Tennessee v. Garner*, 471 U.S. 1, 3, 105 S.Ct. 1694, 1697 (1985). Mannino was not dangerous or fleeing. Even if you believe the defendants' claim of "passive resistance," the force used against this 75 year old man was clearly excessive to the need and not reasonable. The defendants, Major, Lochridge and Jones', take down of Mannino consisted of wrenching his arm out of socket, slamming him into a car and face first to the ground. From the perspective of a reasonable officer these actions were unreasonable. Clearly an issue exists as to whether the defendants violated Mannino's Fourth Amendment right to be free from excessive force.

-14-

c.    **First Amendment Claim**

Mannino was arrested for questioning the defendants', Lochridge and Majors', authority, after they refused to identify themselves. This arrest was retaliation for his exercise of free speech.

To establish a § 1983 claim of retaliation for the exercise free speech, Plaintiffs must prove that:  (1)  Defendants were acting under color of state law; (2) Plaintiff's speech activities were protected under the First Amendment; and (3) Plaintiff's exercise of their protected right was a substantial or motivating factor in Defendants' actions.  *Pierce v. Texas Dep't. of Crim. Justice Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994);  *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

As to the above three factors:  (1) There is no dispute that the defendants, Lochridge, Major and Jones, were acting under color of state law.  They all claim they were at the plaintiff's property to investigate purported drug activity.[3]  (2) The plaintiff's speech, merely asking the defendants who they were and what they were doing on his property, is non-offensive protected speech.  Finally, (3) According to the plaintiff, he was assaulted, battered and arrested for repeatedly asking the defendants these questions, not withstanding the fact that the defendants claim they arrested him for Resisting Arrest and Battery of an Officer.  Assuming the facts as presented by the plaintiff, it is obvious that the plaintiff's exercise of his first amendment right was a substantial or moving factor in the defendants' actions

"The First Amendment protects a significant amount of verbal criticism and challenge

_____

[3]No drugs were found and no one was arrested for drug activity.  (Defense Exh. F - Lochridge Depo. p. 47; p. 48, lines 1-11).

**-15-**

directed at police officers." *Enlow v. Tishomingo County*, 962 F.2d 501, 509 (5th Cir. 1992) (quoting *City of Houston v. Hill*, 482 U.S. 451, 462, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987)). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id*. (Quoting *Hill*, 482 U.S. at 462-63, 107 S.Ct. 2502). In *Enlow*, this court reversed the grant of summary judgment on the basis of qualified immunity where the facts were disputed whether an officer arrested the plaintiff because of violating a statute or because the plaintiff asked the officer to furnish a warrant. *Id*. at 510.

Courts need to be alert to arrests that are prompted by constitutionally protected speech, even when the arrestee's words are directed at a police officer

performing official tasks. Trained officers must exercise restraint when confronted with a citizen's anger over police action. *Id*. at 509; *see also Lewis v. City of New Orleans*, 415 U.S. 130, 134-35, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974) (Powell, J., concurring). *Mesa v. Prejean*, 543 F.3d 264 (5th Cir. 2008).

The validity of Mannino's First Amendment claim hinges on probable cause for his arrest. As stated previously there was no probable cause for Mannino's arrest. Under the circumstances, the defendants' Motion for Summary Judgment on Mannino's First Amendment claim should be denied.

### d.  Civil Conspiracy Claim (Fourth and Fourteenth Amendment)

The plaintiff's claims of a conspiracy are found in paragraphs 22, 27, 28 and 34 of his complaint. The evidence when viewed in a light most favorable to the plaintiff supports his claim

-16-

that the defendants conspired with one another to cover-up their civil rights violations, ie. the false arrest and excessive force, by fabricating claims that Mannino poked Major's chest several times and that he resisted arrest and battered the defendant, Major. None of these things occurred according to Mannino and his two witnesses. Nonetheless all the defendants allege in their respective police reports these claims. If Mannino and his witnesses are telling the truth then the defendants had to have conspired with one another immediately after the event to come up with the same story. The three defendants reasserted these lies in their depositions and assert them in this Motion for Summary Judgment.

The Fifth Circuit recognizes that an action for conspiracy may be maintained under section 1983. *See Ryland v. Shapiro*, 708 F.2d 967, 974 (5th Cir. 1983) (citing *Slaving v. Curry*, 574 F.2d 1256, 1261 (5th Cir.), *modified*, 583 F.2d 779 (5th Cir. 1978)); *Mansell v. Saunders*, 372 F.2d 573, 576 (5th Cir. 1967). The elements of civil conspiracy are (1) an actual violation of a right protected under section 1983 and (2) actions taken in concert by defendants with the specific intent to violate the aforementioned right. *Kerr*, 71 F.3d at 340 (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)). Civil conspiracies under section 1983 are charged as "the legal mechanism through which to impose liability on each and all of the defendants without regard to the person doing the particular act." *Ryland*, 708 F.2d at 974. A plaintiff can establish the existence of a conspiracy through circumstantial evidence. *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir. 1979).

Mannino was questioned extensively in his deposition about the contents of all three defendant officers' police reports and asked to identify statements in the reports that were untrue. (Defense Exh. G - Mannino Depo. pp. 53-83). According to the plaintiff, the reports of all the

Case 3:09-cv-00660-BAJ-SCR   Document 23   02/14/11   Page 17 of 25

defendant officers was filled with similar fabrications. This is evidence of a conspiracy. The Defendants' Motion for Summary Judgment on Mannino's conspiracy claim should be denied.

### e.    Punitive Damages

The plaintiff, Mannino, has pled and prayed for punitive damages in his complaint. He has presented clear and convincing evidence that the defendants' behavior demonstrated reckless or callous indifference to his constitutional rights.

Under section 1983 punitive damages may be awarded only if the official conduct is "motivated by event intent" or demonstrates 'reckless or callous indifference" to a person's constitutional rights. *Sockwell*, 20 F.3d at 192 (*citing Smith v. Wade*, 461 U.S. 30, 1103 S.Ct. 1625, 1640 (1983)). Punitive damages are designed to punish a wrongdoer for "willful and malicious conduct and to deter others from similar behavior." *Stachura*, 477 U.S. at 307 n.9, 106 S.Ct. at 2543 no. 9.

The defendants' Motion for Summary Judgment on the issue of punitive damages should be denied as there exist a genuine issue of material fact as to whether they acted with reckless or callous indifference to Mr. Mannino's constitutional rights.

### 2.    QUALIFIED IMMUNITY

The plaintiff's §1983 claims seeking damages from defendants in their individual capacities are subject to the affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, ---U.S. ---, 129 S.Ct. 808, 815, 172 L.Ed. 565 (2009) (quoting

**-18-**

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed. 396 (1982)).

When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, "a plaintiff must satisfy a two-prong test." *Atteberry*, 430 F.3d at 253. "First, he must claim that the defendants committed a constitutional violation under current law." *Id.* (Citing, e.g., *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004) (en banc) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed. 523 (1987)). "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.' " *Id.* at 350 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S.Ct. 2508, 153 L.Ed. 666 (2002)). These standards apply to defendants' assertions of qualified immunity as they relate to Mannino's arrest.

The defendants, Major, Lochridge and Jones, are not entitled to qualified immunity for their arrest of Mannino. Although Major initiated the arrest, Lochridge and Jones joined in immediately thereafter. As is alleged in the Complaint and supported by the deposition testimonies of the

**-19-**

plaintiff, Mike Mannino, Jr. and Brad Mannino, the defendants' arrest of Mannino was not supported by probable cause. He did not resist arrest and he did not commit a battery.

The constitutional claim of false arrest requires a showing of no probable cause. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed is committing, or is about to commit an offense.' " *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)). The facts must be known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest. *Sibron v. New York,*, 392 U.S. 40, 62-63, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). The facts must be particularized to the arrestee. *Ybarra*, 444 U.S. at 91, 100 S.Ct. 338. The court applies an objective standard, which means that it will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense. *See Devenpeck v. Alford*, 543 U.S. 146, 153-54, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).

The defendants state that Mannino's refusal to leave his property when ordered to do so by unidentified strangers is Resisting Arrest. This is not Resisting Arrest under 14:108 as was previously explained in subsection a. of this Opposition. This was known to the defendants when they assaulted and battered Mannino under the guise of an arrest. The defendants, Major, Lochridge and Jones, had no probable cause to arrest Mannino for anything, let alone Resisting Arrest or Battery of an Officer.

-20-

The Fourth Amendment right to be free from false arrest-arrest without probable cause-was clearly established at the time of arrest. *See, e.g., Gerstein v. Pugh*, 420 U.S. 103, 111-12, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Mendenhall*, 213 F.3d at 230; *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988). Nonetheless, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Mendenhall*, 213 F.3rd at 230 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). Thus, the plaintiff must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrest. *See Babb v. Dorman*, 33 F.3d 472, 478 (5th Cir. 1994); see also *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).

Mannino has presented clear and convincing evidence that the defendants, Major, Lochridge and Jones, lacked arguable probable cause to arrest him. Consequently, they had to also know that physically assaulting and battering Mannino was unreasonable and unlawful. The defendants are not entitled to qualified immunity.

## B.   STATE LAW CLAIMS

### 1.   OFFICERS LIABILITY

#### a.   False Arrest, False Imprisonment, Assault and Battery Claims

The plaintiff has asserted a claim of False Arrest and False Imprisonment under State law. He was arrested and then falsely imprisoned from the time of his arrest until the time the defendants released him and issued him a summons at the hospital. (Defense Exh. A - Major Depo. p.55, lines 1-20; p.57, lines 9-25; p.58, line 1).

In a state law claim for false arrest, the Louisiana Supreme Court has explained: "Wrongful

**-21-**

arrest, or the tort of false imprisonment, occurs when one arrests and restrains another against his

will and without statutory authority.  The tort of false imprisonment consists of the following two

essential elements: (1) detention of the person; and (2) the unlawfulness of the detention".  *Kennedy*

*v. Sheriff of East Baton Rouge*, 935 So.2d 669, 690 (La.2006).

A peace officer may arrest a person without a warrant when the peace officer has reasonable

cause to believe that the person to be arrested has committed an offense, although not in the presence

of the officer.  La.C.Cr.P. art. 213(3).  Louisiana jurisprudence explains:

> Reasonable cause has been judicially recognized as equivalent to
> probable cause.  Although more than mere suspicion is needed, the
> measure of probable cause to arrest does not require that a police
> officer have proof sufficient to convict.
>
> Probable cause is based on the totality of the circumstances.
> Probable cause exists if, at the moment an arrest is made, the totality
> of the facts and circumstances within an officer's knowledge is
> sufficient to justify an average man of caution in believing that the
> arrestee had violated or was violating the law.

*Harris v. Eckerd Corp.*, 796 So.2d 719, 723 (La.App. 2nd Cir. 2001) (citations omitted).

Regarding state law battery claims, the Louisiana Supreme Court has explained:

> A battery is a harmful or offensive contact with a person, resulting
> from an act intended to cause the plaintiff to suffer such a contact.
> The defendant's intention need not be malicious nor need it be an
> intention to inflict actual damage.  It is sufficient if the defendant
> intends to inflict either a harmful or offensive contact without the
> other's consent.

*Landry v. Bellanger*, 851 So.2d 943, 949 (La. 2003) (citations, quotation marks, brackets and

ellipsis omitted).  The court further explained:  "In a suit for damages resulting from an intentional

tort, the claimant must carry the burden of proving all prima facie elements of the tort, including lack

-22-

of consent to the invasive conduct.  In turn, the defendant may seek to prove that he is without fault because his actions were privileged or justified, such as self-defense.  *Id*. at 954.

Plaintiff's state law claims mirror his federal claims under § 1983, and there are no material differences in the applicable legal standards under state and federal law.  See *Kyle v. City of New Orleans*, 353 So.2d 969, 971-72 (La. 1977) (describing elements of false arrest and excessive force claims under Louisiana law).

For the reasons previously stated the defendant's arrest of Mannino was unlawful as there was no arguable probable cause for his arrest.  In addition, the defendants utilized excessive force.  Accordingly, the defendants' Motion for Summary Judgment on the state law issues of false arrest, false imprisonment, assault and battery should be denied.

### b.      Respondeat Superior, Sheriff Sid Gautreaux

With respect to the state law claims, the sheriff, in his official capacity, can be held liable for the torts committed by his deputies.  The seminal case on this is *Jenkins v. Jefferson Parish Sheriff's Office*, 402.So.2d 669, 671 (La. 1981).  In *Jenkins*, the Louisiana Supreme Court held that La. Civ. Code Art. 2320 imposes liability on a sheriff, in his official capacity, as an employer of his deputy for the deputy's torts committed in the course and scope of his employment.  Thus, Sheriff Gautreaux would be responsible for the acts of the deputies if they wrongfully beat and arrested the plaintiff.  *See also, Thomas v. Frederick*, 766 F.Supp. 540, 559 (W.D. La. 1991) (a sheriff is responsible under the doctrine of respondeat superior for the torts of his deputies);  *Hall v. St. Helena Sheriff's Department*, 668 F.Supp. 535 (M.D. La. 1987), <u>affirmed</u>, 862 F.2d 872 (5th Cir. 1988) (a parish sheriff is liable in his official, but not personal, capacity as employer of a deputy for

the torts committed by a deputy); and *Deshotels v. Norsworthy*, No. 08-1378, 2010 WL 2679889 (W.D. La. July 1, 2010) (if an officer uses unreasonable force, he and his employer are liable for any injuries which result).

Sheriff Gautreaux is responsible under Louisiana law for the wrongful actions of Deputies Major, Lochridge and Jones, when they exercised excessive force against Mannino and thereafter arrested him on charges which were not justified. Under the theory of respondeat superior, Sheriff Gautreaux, in his official capacity, is liable in solido with Deputies Major, Lochridge and Jones. Accordingly, Sheriff Gautreaux's Motion for Summary Judgment should be denied.

## C.    CONCLUSION

The plaintiff has presented clear and convincing evidence to support his claims of Civil Rights violations for false arrest, false imprisonment, excessive force, conspiracy and denial of free speech as it relates to the defendants, Lochridge, Major and Jones. Consequently, there is also evidence to support his state law claims of false arrest, false imprisonment, assault and battery as to these three defendants. Because the defendants were in the course and scope of their employment with the defendant, Gautreaux, when they committed the State law torts, Gautreaux is liable under State Law. The evidence also supports plaintiff's claim for punitive damages. Accordingly, the defendants' Motion for Summary Judgment should be denied on these issues.

Case 3:09-cv-00660-BAJ-SCR   Document 23   02/14/11   Page 24 of 25

Respectfully submitted;

s/ GARY W. BIZAL _____
GARY W. BIZAL #1255
Attorney for plaintiff
**PIERCE & BIZAL**
639 Loyola Avenue, Suite 1820
New Orleans, Louisiana 70113
(504)525-1328 Telephone
(504)525-1353 Fax
piblaw@bellsouth.net

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 14, 2011 a copy of the above and foregoing was  filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

s/GARY W. BIZAL _____
GARY W. BIZAL, #1255

**-25-**